Joseph MURRAY, Jr., a minor by Joseph Murray, Sr., his guardian, et al., Plaintiffs-Appellants,

v.

WEST BATON ROUGE PARISH SCHOOL BOARD et al., Defendants-Appellees.

No. 72–1871.

United States Court of Appeals, Fifth Circuit.

Jan. 19, 1973.

---

Etta Kay Hearn, Wilfret R. McKee, Baton Rouge, La., for plaintiffs-appellants.

Charles H. Dameron, Emile C. Rolfs, III, Baton Rouge, La., for defendants-appellees.

John Dale Powers, Baton Rouge, La., amicus curiae.

Before RIVES, THORNBERRY and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

In this case, plaintiffs, black students in the West Baton Rouge Parish, Louisiana public schools, challenge the constitutionality of (1) the Louisiana public school disciplinary statutes; (2) the rules and regulations of Port Allen High School; and (3) the system of psychological testing used in the elementary schools. The district court, after trial, dismissed plaintiffs' suit. We affirm.

## I. Disciplinary Statute

The genesis and focus of much of this litigation is a disruptive demonstration that took place at Port Allen High School on January 19, 1972. As a result of this demonstration, over one hundred black students were suspended in attainder-like fashion without any prior hearing. Immediately following this mass suspension, the district court found that the school should not have suspended the demonstrators without some type of prior hearing, and on January 28, 1972, the court ordered that all suspended students be reinstated and afforded a hearing. This order was complied with by the school authorities. The students were reinstated, hearings were held, and some of the students were then suspended again. Since that time, at least two

students have been sent home from school for short periods of time without having been accorded a prior hearing.

On March 27, 1972, plaintiffs, a rather ill-defined class of black students and parents, filed a § 1983 complaint in federal district court seeking declaratory and injunctive relief, alleging *inter alia,* that the state disciplinary statute, § 416 of Title 17, La.Rev.Stat., was unconstitutional under the First and Fourteenth Amendments.

■ A. *Three-Judge Court Requirement.* In their complaint, plaintiffs requested that a three-judge court be convened pursuant to 28 U.S.C. § 2281 to pass on the statutory claim. The district court refused this request. The law is clear that even where there is an otherwise proper constitutional-injunctive challenge to a state statute, a three-judge court can be denied if the constitutional question is plainly insubstantial. Ex parte Poresky, 1934, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; Kirkland v. Wallace, 5 Cir. 1968, 403 F.2d 413, 415–416. Plaintiffs challenge the statute on both First Amendment and Due Process grounds. Since we find both challenges plainly insubstantial, *see* Pervis v. LaMarque Ind. School Dist., 5 Cir. 1972, 466 F.2d 1054, we hold that a three-judge court was not necessary in this case.

B. *First Amendment Vagueness.* Included in the list of offenses that are punishable under the statute are: "willful disobedience," "intentional disruption," "immoral or vicious practices," "disturbs the school," and others of similar import.[1] Plaintiffs contend that these vague proscriptions give school authorities too much leeway in deciding what activity should be punished. It is argued that since the statute could easily be used arbitrarily to infringe on protected First Amendment activities it should therefore be struck down as too vague. *E. g.,* Thornhill v. Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093.

In Pervis v. LaMarque Ind. School Dist., *supra,* this court rejected a similar argument in a case where the vagueness of the term "incorrigible" was challenged. "Incorrigible" was further defined in the statute under attack as:

" * * * any child within the compulsory school attendance age who is * * * insubordinate, disorderly, vicious, or immoral in conduct, or who persistently violates the reasonable rules and regulations of the school which he attends, or who otherwise persistently behaves in such a manner as to render himself an incorrigible."

*Id.* at 1057 of 466 F.2d. We rejected the argument that the statute was unconstitutionally vague, with Judge Rives dis-

1. The entire list of punishable activity in the statute reads as follows:

" . . . willful disobedience; who treats with intentional disrespect a teacher, principal, superintendent, member or employee of the local school board; who makes against any one of them an unfounded charge; who uses unchaste or profane language; who is guilty of immoral or vicious practices, or of conduct or habits injurious to his associates; who uses tobacco or alcoholic beverages in any form in school buildings or on school grounds; who disturbs the school and habitually violates any rule; who cuts, defaces or injures any part of public school buildings, or any property belonging to said buildings; or who writes any profane or obscene language or draws obscene pictures in or on any school material or on any public school premises, or on any fence, pole, sidewalk or building on the way to or from school; or who is found carrying firearms, knives, or other implements which can be used as weapons, the careless use of which might inflict harm or injury; or who throws missiles on the school grounds liable to injure other pupils, or who instigates or participates in fights while under school supervision; or who violates traffic and safety regulations; or who leaves the school premises without permission; or who leaves the classroom during class hours or detention without permission; or who is habitually tardy or absent; or who commits any other serious offense."

missing the constitutional claim as "insubstantial." *See also*, Dunn v. Tyler Ind. School Dist., 5 Cir. 1972, 460 F.2d 137, 142–143; *but see*, Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1061–1067 (1969).

■■ The statutory proscriptions at issue here are unquestionably imprecise. It is clear, however, that school disciplinary codes cannot be drawn with the same precision as criminal codes and that some degree of discretion must, of necessity, be left to public school officials to determine what forms of misbehavior should be sanctioned.[2] Absent evidence that the broad wording in the statute is, in fact, being used to infringe on First Amendment rights, *cf.* Tinker v. Des Moines Ind. Community School Dist., 1969, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, we must assume that school officials are acting responsibly in applying the broad statutory command. *See generally*, Karr v. Schmidt, 5 Cir. 1972, 460 F.2d 609. Despite a vehement attack on the administration of the Port Allen High School, plaintiffs have in no way made a factual showing that the statutory discretion accorded to the school officials is being constitutionally abused.

■■ Although a student does not discard his First Amendment rights upon entering the school house door, *see, e. g.,* Tinker v. Des Moines Ind. Community School Dist., *supra*; Shanley v. Northeast Ind. School Dist., 5 Cir. 1972, 462 F.2d 960, the First Amendment does not give individual students the right to disrupt openly the educational process in order to press their grievances. We cannot say that this statute, either on its face or as applied by the Port Allen High School authorities, violates the First Amendment.

C. *Due Process.* Plaintiffs' due process attack on the statute appears to be based primarily on the fact that the statute does not, in terms, require a prior hearing every time a student is suspended. The statute reads, in relevant part:

"A. Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school or on the playgrounds of the school, on the street or road while going to or returning from school, or during intermission or recess. School principals may suspend from school any pupil who is guilty of . . . [any offense listed in footnote 1, *supra*]. Notice in writing of the suspension and the reasons therefor shall be given to the parent or parents of the pupil suspended. Any parent of a pupil suspended shall have the right to appeal to the parish superintendent of schools, who shall conduct a hearing on the merits. The decision of the superintendent of schools on the merit of the case, as well as the term of suspension, shall be final, reserving the right to the superintendent of schools to remit any portion of the time of suspension."

■■ Due process requirements for public school suspensions have not yet been sharply defined. *See, e. g.,* Williams v. Dade County School Board, 5 Cir. 1971, 441 F.2d 299; Dunn v. Tyler Ind. School Dist., *supra*. On the basis of existing case law, however, we can say without equivocation that plaintiffs

---

2. In Burnside v. Byars, 5 Cir. 1966, 363 F.2d 744, 748, we said:

"The interest of the state in maintaining an educational system is a compelling one, giving rise to a balancing of First Amendment rights with the duty of the state to further and protect the public school system. The establishment of an educational program requires the formulation of rules and regulations necessary for the maintenance of an orderly program of classroom learning. In formulating regulations, including those pertaining to the discipline of school children, school officials have a wide latitude of discretion."

*See also* Karr v. Schmidt, 5 Cir. 1972, 460 F.2d 609; Southern v. Board of Trustees for Dallas Ind. School Dist., 318 F.Supp. 355, 359, (N.D.Tex.1970), aff'd., 5 Cir. 1972, 461 F.2d 1267; Bright v. Nunn, 6 Cir. 1971, 448 F.2d 245; Tate v. Board of Education of Jonesboro, 8 Cir. 1972, 453 F.2d 975.

have failed to demonstrate that any due process violation occurred. It is clear that a suspension for forty days or more without provision for a prior hearing presents serious due process problems. *See* Williams v. Dade County School Board, *supra*; Pervis v. LaMarque Ind. School Dist., *supra; see also*, Dixon v. Alabama State Board of Educ., 5 Cir. 1961, 294 F.2d 150, cert. denied, 368 U. S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193. It is equally clear that due process does not require a hearing every time a student is sent home from school or suspended for a short period of time. Dunn v. Tyler Ind. School Dist., *supra*; Banks v. Board of Public Instruction of Dade County, S.D.Fla.1970, 314 F.Supp. 285, vacated and remanded, 1971, 401 U.S. 988,[3] 91 S.Ct. 1223, 28 L.Ed.2d 526, aff'd 450 F.2d 1103; Tate v. Board of Education of Jonesboro, 8 Cir. 1972, 453 F.2d 975; Farrell v. Joel, 2 Cir. 1971, 437 F.2d 160; Baker v. Downey City Board of Educ., C.D.Cal.1969, 307 F. Supp. 517; *see also*, Black Students of North Fort Myers Jr.-Sr. High School v. Williams, 5 Cir. 1972, 470 F.2d 957.

The statute before us does not, in explicit terms, indicate the duration of a "suspension." Absent evidence that students are, in fact, being suspended for long periods of time without prior hearings, we cannot assume that the statute is being applied in an unconstitutional fashion.[4] Plaintiffs have not shown us any example of a student being suspended for more than a few days without a hearing having been accorded. Whatever procedural inadequacies existed during the January 19th mass suspensions were cured by the district court order of January 28, and we do not feel that the school board actions in that incident require a holding that the state statute is unconstitutional.

Further, we cannot accept plaintiffs' claim that the statute is un-constitutional because it provides that the superintendent is to conduct all suspension hearings. Due process in the schools does not require that a court of law be convened to hear every suspension, and we find that a hearing before the superintendent is, at least presumptively, adequate to meet the requirements for a fair, impartial hearing. This is not to say that if it can be clearly shown that the superintendent was biased or in any way unable to function fairly as a trier of fact, that a violation of due process cannot be shown. No such showing was made here, and any complaint as to the constitutionality of the statute in this regard must fail.

In sum, whatever individual injustices may have taken place in the administration of discipline in West Baton Rouge Parish are beyond our jurisdiction. Plaintiffs' constitutional challenge to the statute is clearly unsubstantial, and the district court was correct in dismissing this challenge and refusing a three-judge court.

## II. Port Allen High School Rules and Regulations

Plaintiffs contend that the rules and regulations promulgated to the students of Port Allen High School unlawfully inhibit their First Amendment rights and they request declaratory and injunctive relief. Particularly, they point to various students who have been suspended for violation of grooming codes. This court has clearly and finally held that we will not interfere with high school regulations involving dress, hair, and similar matters. Karr v. Schmidt, *supra*, and insofar as plaintiffs' appeal is directed at these regulations the contentions are summarily rejected.

Furthermore, a minority of the students, be they black or white, have no First Amendment right to convene their own assembly during school hours in defiance of the administration and thereby

---

3. The part of the three-judge court opinion in *Banks* that upheld suspensions without prior hearings was not appealed to the Supreme Court.

4. The statute explicitly provides for a prior hearing in expulsion cases.

disrupt school order and discipline. There is no other way to characterize the January 19th disruption. There was no violation of any First Amendment rights by the school's refusal to accede to this form of rebellion. Finally, plaintiffs' allegations that the rules are being enforced discriminatorily against the black students are totally unsupported by the record.

### III. Psychological and Achievement Testing

▇▇▇▇ Plaintiffs have made a broad based attack on the use of psychological testing at Port Allen Elementary School. The focus of the attack appears to be that the tests are being used to discriminate against the black students. There is absolutely no evidence that the testing is being used to foster segregation in the class rooms, *cf.* Hobson v. Hansen, D.D.C.1967, 269 F.Supp. 401, and despite conclusionary allegations to the contrary, there is no evidence whatsoever that the tests are being administered in a discriminatory manner. If, as plaintiffs claim, there are a few black students whose educational progress has been wrongly retarded because of this testing, it is most unfortunate.[5] But as a federal court we cannot intervene absent some well-defined constitutional deprivation. There is no factual showing that the tests were culturally biased, discriminatorily conceived, or even that they had a discriminatory effect. That the test might not be an educationally valid one for a few individual children does not, in and of itself, give rise to a constitutional deprivation. On the record before us, we can find no *constitutional* fault with the testing in the Port Allen Elementary Schools.

In order to avoid any misinterpretation and even at the risk of redundancy, we conclude by emphasizing that the Constitution is not fenced out of the school grounds, but that every barb felt by students or parents in the school fence is not constitutionally offensive. Although we shall not hesitate to use our constitutional clippers where appropriate, we cannot forget that a public school principal retains considerable freedom to administer his realm. For better or for worse, our jurisdiction attaches only when the Constitution has been violated—not every time a principal acts arbitrarily or unfairly. In affirming the dismissal of this claim we are in no way passing on the propriety or wisdom of the disciplinary and testing practices of West Baton Rouge Parish. We merely hold that on the facts of this case, plaintiffs have totally failed to prove a deprivation of any constitutional right.

Affirmed.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

5. The only real example given by plaintiffs of the discriminatory effect of the testing is the allegedly wrongful detention in second grade of one student, Henrietta Marionneaux. Whatever the merits of the tests given her, plaintiffs have failed entirely to show that racial considerations played any part in either the administration or effect of these tests. In fact, contrary to plaintiffs' assertions, it appears that more whites than blacks have been administered these psychological tests in some years.