Eddie RHYNE et al., Plaintiffs,

v.

Robert E. CHILDS et al., Defendants.

Civ. A. No. 875.

United States District Court,
N. D. Florida,
Marianna Division.

June 8, 1973.

Kent Spriggs, Tallahassee, Fla., Nathanial R. Jones, James I. Meyerson, NAACP, New York City, for plaintiffs.

Joseph A. Sheffield, Marianna, Fla., Charles E. Miner, Jr., Atty., Board of Education, Tallahassee, Fla., for defendants.

## MEMORANDUM-ORDER

MIDDLEBROOKS, District Judge.

Plaintiffs filed this action seeking declaratory and injunctive relief relative to certain alleged discriminatory discipline practices of officials of the Jackson County, Florida, public school system. Pursuant to the application of a number of plaintiffs for preliminary injunction in this matter, this Court on March 22, 1972, denied the preliminary relief requested but directed the defendant school board to modify the permanent expulsions which had been imposed in favor of less severe disciplinary measures. A copy of the order denying preliminary relief is appended hereto.

This cause came on for trial before the Court on May 1, 1973, in Marianna, Florida. The defendants remaining in this action are the Superintendent of the Board of Public Instruction, the Chairman of that Board, the members of the Jackson County School Board and the Principal of Marianna High School. Plaintiffs allege generally on behalf of themselves and a class of "all other black students presently attending schools in Jackson County public school system or who may attend said schools in the future" that they were disciplined, suspended or expelled because of their race. As a result of defendants' alleged constitutionally impermissible conduct plaintiffs seek at this hearing to have the records of disciplinary action against them expunged and to recover counsel fees and costs of these proceedings.

Having considered the record in this cause, including the transcript of proceedings before the Jackson County School Board, having resolved the credibility choices to be made and after having considered the demeanor of the witnesses and in particular the demeanor of those plaintiffs present at trial, the Court makes the following findings of

fact and conclusions of law and incorporates herein those findings and conclusions contained in previous orders of this Court:

## FINDINGS OF FACT

■ The events occurring in Marianna, Florida, on January 3, 1972, and January 6, 1972, which are hereinafter chronicled, form the immediate bases for plaintiffs' allegations of discriminatory discipline practices on the part of defendants.

## EVENTS OF JANUARY 3, 1972

■ On Monday, January 3, 1972, a general melee erupted between black and white students at the Marianna High School, which fracas was attributed to happenings the previous Saturday night at a local hamburger establishment. Fighting was widespread throughout the school facility but this wave of belligerency was soon quelled by the school administrators and staff. Once a semblance of order was restored it was decided that classes be dismissed for the day and that students be sent home. It is in this factual backdrop that the expulsions of plaintiffs Small, Nance, Heatrice, Long and Pittman are cast.[1]

■ Although the immediate cause of the fighting on January 3, 1972, is in dispute it appears that once school officials were alerted of the disorder they were dispatched to the scene of the disturbance and began to separate the combatants and to put a halt to the fighting. All but a few of the participants heeded the command of the school officials to cease and desist. Among these were a majority of the plaintiffs.

The defendant Centers upon reaching one scene of the fighting attempted to restore order. One of the participants was plaintiff Small. Although in general the other participants complied with the defendant Centers' order to disengage from further combat, plaintiff Small attempted to provoke further fighting by brandishing a belt and by taunting and antagonizing his adversaries with threatening gestures and disregarded the order.

At another scene of fighting an assistant principal of the Marianna High School attempted to subdue hostilities. This administrator, himself a black person, was successful in dispersing all combatants except the plaintiff Long who picked up a stool and menacingly held it as if to strike the administrator. This plaintiff upon suggestion of the assistant principal, finally departed without further incident.

Because of the willful disobedience by these two plaintiffs of the lawful orders of school officials coupled with plaintiffs' prior record of school misconduct, these two plaintiffs were expelled by the defendant school board.

■ After classes had been dismissed on that date a second incident involving an instructor and a group of black students including plaintiffs Small, Nance and Heatrice occurred in the school parking lot. It was these plaintiffs' conduct toward school administrators and teachers during these episodes which prompted the defendant Centers to order their permanent expulsion from the public school system of Jackson County, Florida.

■ An instructor, Bell, had left the building to go out to the school parking lot to see if "everything was all right". While he was returning to the building, Bell was met by a group of black students among whom were plaintiffs Small, Nance and Heatrice. He was soon con-

1. The claims of Sweet, Long, Small and Smith have been stricken from the pleadings and dismissed as to them for their failure to answer interrogatories propounded to them by the defendants. Rule 37(d), Federal Rules of Civil Procedure. Additionally, these parties to the original action were not present at this the final hearing in this cause and counsel for plaintiffs has represented to the Court that he has been unable to communicate with those persons and have them present at trial to answer any such questions which defendants may have desired to ask them.

fronted and surrounded by this throng. When Bell attempted some sort of evasive action, plaintiff Small blocked his path by extending his arms with clinched fists. As Bell turned to go again he was confronted by plaintiff Nance who was holding a piece of broken concrete as if to strike Bell with it. Meanwhile plaintiff Heatrice had joined in this harassment of Bell and was hurling a verbal attack at Bell which seemed to compound his dilemma. Luckily one of the school coaches happened on the scene and rescued Bell from his would-be-assailants and probably prevented Bell from being seriously injured.

A portion of plaintiff Small's testimony discloses that he had intended to hit Bell but had changed his mind. It was also testified that the group had decided to "pick on" Bell because of his "attitude" towards blacks.

■ As a result of the foregoing these plaintiffs were expelled because of disrespect for staff members and for threats to staff members. The Court finds that these plaintiffs were not disciplined for their involvement in the general fracas at the school on the morning of January 3, 1972. Many blacks and whites were involved in this disorder but culpability for this incident was attributed to neither side and no disciplinary action against the numerous participants was taken merely because they were involved in the fighting.

## CLAIM OF PLAINTIFF BILLY EARL HARRISON

■ The more persuasive evidence as to the claim of the plaintiff Harrison is that this plaintiff received injuries as a result of the general disturbance on January 3, 1972, and not as a result of any purposeful inaction on the part of school officials.

## EVENTS OF JANUARY 6, 1972

· [8] In the aftermath of the disruption at Marianna High School on January 3, 1972, there followed further disorder on January 6, 1972, wherein a group of black students blocked the hallways for a short time but were persuaded by the defendant Centers to meet with him to voice their grievances. Having reached an impasse in their discussion with defendant Centers they were given the alternative of returning to class or returning home in which case they would receive a zero grade for the day in addition to an unexcused absence. The group elected to leave school and attempted to enlist the support of other black students who were in their respective homerooms and not in attendance at the meeting with the defendant Centers. This action caused further disruption in the school and many of these students were suspended from school as a result of their involvement in the impromptu student boycott which materially disrupted the normal educational process at the Marianna High School.

Upon their departure from the school premises these students began a march toward downtown Marianna to the Superintendent's office. As the march progressed plaintiffs Smith and Sweet, among others, were arrested by local law enforcement personnel and placed under arrest for disorderly conduct.

■ The evidence discloses that none of the named defendants has ever initiated criminal charges against these plaintiffs.

■ The plaintiff Pittman was placed on interim suspension for leaving the campus on January 6, 1972. He and his parents then met with defendant Centers on January 11, 1972, to discuss this plaintiff's suspension. His attitude at this conference was one of non-cooperation and non-participation. It was this plaintiff's behavioral pattern at this conference which caused the defendant Centers to believe that plaintiff Pittman would not cooperate with and obey school authorities and prompted Centers to recommend expulsion. At the hearing held before the defendant school board on January 20, 1972, for which hearing plaintiff was duly noticed, he chose not to attend. It was this plain-

tiff's attitude of non-cooperation and prior record of misconduct which resulted in the board's permanent expulsion of plaintiff Pittman. This plaintiff also chose not to appear at the hearing before this Court.

■ In addition to these specific instances referred to in the complaint and amended complaint, plaintiffs have introduced evidence of other alleged discriminatory disciplinary practices of defendants during the period in question in order to establish an overall scheme or pattern of racial discrimination. The Court has considered the evidence, which standing alone, would constitute impressive, if not persuasive, statistics. But this allegation of discrimination must be viewed in light of all the testimony adduced, particularly that of five county school administrators whose testimony disclosed that this statistical disparity of suspensions of blacks vis-a-vis that of whites resulted in the main from the decision of black students to forego corporal punishment when a breach of discipline occurred and elect instead to be suspended from their classes. By the same token the record is not devoid of instances where defendants have expelled or suspended white students for similar breaches of discipline.

The Court has also considered proceedings and disciplinary action taken against plaintiffs Eddie Rhyne and Muriel Rhyne stemming from incidents at the Marianna High School in 1971. The Court considered the record made at those proceedings and is fully satisfied that these plaintiffs were afforded ample procedural safeguards and that the action recommended by the defendant board against plaintiffs to have been supported by an adequate factual basis.

## CONCLUSIONS OF LAW

■ ■ This Court has jurisdiction over the subject matter of and the parties to this action. Title 28, United States Code, Section 1343(3); Title 42, United States Code, Section 1983.

■ Remaining for disposition by this Court are the following claims contained in the amended complaint:

(a) Whether defendants by their conduct have deprived plaintiffs of rights under the Thirteenth Amendment and Title 42, United States Code, Section 1981, to be free from the badge of slavery;

(b) Whether defendants have deprived plaintiffs of substantive due process rights to freedom of speech and assembly under the First and Fourteenth Amendments.

■ ■ The Court has previously determined in part the questions relating to plaintiffs' procedural due process and equal protection claims. In consideration of testimony presented at final hearing the Court reaffirms its prior preliminary conclusions and finds that the action taken by defendants against plaintiffs to be supported by a substantial factual basis.

■ Plaintiffs were afforded adequate and timely notice of disciplinary proceedings, they were represented by counsel if they so chose and they were given opportunity to confront their accusers and to cross-examine them. These procedures fully comport with the traditional notions of due process governing school disciplinary proceedings. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961); Wright v. Texas Southern University, 392 F.2d 728 (5th Cir. 1968). Furthermore, there was not here present a constitutionally impermissible delay between suspension and hearing as to necessitate remedial action by this Court. See e. g. Williams v. Dade County School Board, 441 F.2d 299 (5th Cir. 1971). See also Black Students of North Fort Myers H. S. v. Williams, 470 F.2d 957, 5th Cir. 1972. Due process is not affronted when students are disciplined for violations of unwritten rules when misconduct challenges lawful school authority. and undermines the orderly operation of the school. Hasson v. Boothby, 318 F. Supp. 1183 (D.C.Mass.1970). See also

*Bright v. Nunn*, 448 F.2d 245 (6th Cir. 1971).

■ ■ Likewise there is no evidence supportive of plaintiffs' argument that defendants have denied them equal protection under the laws by discriminating against black students in disciplining them while taking no such similar action against white students. The record before this Court simply does not bear out plaintiffs' contentions inasmuch as it has been found that some plaintiffs were disciplined for acts of specific misconduct in which white students were not directly involved. The action of defendant school board in finding this group of plaintiffs guilty of misconduct is warranted and found not to be constitutionally infirm. *Tillman v. Dade County School Board*, 327 F. Supp. 930 (S.D.Fla.1971).

■ Additionally, there has been no showing of a pattern of discrimination to plaintiffs in general in the form of punishment meted out to them. Any existing disparity in the form of punishment has been reasonably accounted for and explained and the more clear and convincing evidence persuades this Court, in the absence of substantial factual showing to the contrary, that the defendant school officials have not constitutionally abused the statutory discretion vested in them as regards school discipline. Both white pupils and black pupils have been disciplined by defendants for similar, isolated instances of breaches of discipline. Black students have preferred suspension from school to the other form of punishment, viz., corporal punishment, and for this reason statistics reflect a disparity in the manner of punishment of offending students. This fact is nothing more than a "fortuitous circumstance" which will not support a conclusion that the defendant school officials have discriminated against blacks in exercising their statutory authority. *Ibid.* at 932.

■ ■ ■ The Court must also address plaintiffs' argument that they were disciplined for their exercise of and involvement in a free speech activity. The underpinnings of plaintiffs' argument is premised on a reading of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). There it was said that a student does not discard his First Amendment rights upon entering the school house gate. Equally true is the postulate that freedom of speech is not an absolute right. See e. g. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919). From an intermixture of these principles has evolved a balancing of rights test particularly where the students' exercise of First Amendment rights collides headlong with the rules of school authorities. From this constitutional base the Courts have fashioned the rule that "the First Amendment does not give individual students the right to disrupt openly the educational process in order to press their grievances". Murray v. West Baton Rouge Parish H.S., 472 F.2d 438, at p. 442, 5th Cir. 1973. In accord, Sullivan et al. v. Houston Independent School District, 475 F.2d 1071, 5th Cir. 1973.

■ The evidence before this Court conclusively shows that some of plaintiffs on January 6, 1972, after having conferred with defendant Centers and being unable to resolve their grievances with school officials, decided to leave campus. In doing so these plaintiffs sought to enlist the support of other students not in attendance at this meeting and in doing so disrupted the otherwise orderly processes of the Marianna High School. These activities clearly find no protection within the First Amendment and the defendant school officials acted within their constitutional sphere of authority in the manner and extent of punishment of the defiant student participants. *Murray,* supra, 472 F.2d at p. 443. The record is barren of any factual substance showing that defendants acted in retaliation for the mere expression of a First Amendment right. It is true that this activity was the precipitating cause of their suspensions, but as the Fifth Cir-

cuit has recognized students cannot be given a free hand to pick and choose the time and place to convene and assemble during school hours to voice grievances against school officials. *Ibid.*

■ ■ In a similar vein the Court must conclude that plaintiffs have not sustained their burden in showing constitutionally impermissible conduct on part of defendants which would be tantamount to depriving plaintiffs of their rights to be free from the badge of slavery.

In sum, the Court must conclude that plaintiffs were not denied any constitutional rights by defendants, that they were accorded fair and reasonable hearings with all of the Constitution's mandates; that there was a highly reasonable and just basis for the suspension and expulsion of students due to prohibitive and violative conduct on their part which was clearly established by substantial evidence; and that they were not subjected to any arbitrary or capricious treatment by defendants. Therefore, it is

Ordered:

■ In conformance with the above and foregoing findings of fact and conclusions of law, defendants are directed to present to this Court an order disposing of those issues raised in the amended complaint within the time and in form prescribed by the Federal Rules of Civil Procedure.

■ Plaintiff's motion for rehearing of order granting partial summary judgment or in the alternative to supplement record on appeal be and the same is hereby denied.

## APPENDIX

Rudolph Sweet, et al,

                    Plaintiffs

                v.

Robert E. Childs, et al,

                    Defendants.

## OPINION-ORDER

This cause is before this Court pursuant to notice upon plaintiffs' application for preliminary injunction and various pending motions of defendants in opposition thereto. Disposition of other pending motions which are addressed to the substance of the complaint is a matter to be dealt with by this Court at a later date. The Court is here concerned with the request of plaintiffs Small, Nance, Heatrice, Long and Pittman to have their expulsions from the Marianna High School lifted and their reinstatement ordered, and the request of plaintiffs Sweet and Smith to enjoin the defendant Roberts from prosecuting them on a charge of disorderly conduct emanating from events at the Marianna High School on January 6, 1972. Having heard testimony in this cause and having considered the transcript of proceedings before the Jackson County, Florida, School Board of January 20, 1972, which transcript has been introduced in evidence and made a part of the record in this cause, this Court finds as follows:

## EVENTS OF JANUARY 3, 1972

■ On Monday, January 3, 1972, a general melee erupted between black and white students at the Marianna High School, which fracas was attributed to happenings the previous Saturday night at a local hamburger establishment. Fighting was widespread throughout the school facility but this wave of belligerency was soon quelled by the school administrators and staff. Once a semblance of order was restored, it was decided that classes be dismissed for the day and that students be sent home. It is in this factual backdrop that the expulsions of plaintiffs Small, Nance, Heatrice, Long and Pittman are cast.

■ The immediate cause of the fighting on January 3, 1972, is in dispute but determination of the cause is not necessary for disposition of the motion for preliminary injunction. Suffice it to say that once school officials were alerted of the disorder they were dispatched to the scene of the disturbance and began to separate the combatants and to put a halt to the fight-

ing. All but a few of the participants heeded the command of the school officials to cease and desist. Among these were plaintiffs.

The defendant Centers, upon reaching one scene of the fighting, attempted to restore order. One of the participants was plaintiff Small. Although in general the other participants complied with the defendant Centers' order to disengage from further combat, plaintiff Small attempted to provoke further fighting by brandishing a belt and by taunting and antagonizing his adversaries with threatening gestures and disregarded the order.

At another scene of fighting, an assistant principal of the Marianna High School attempted to subdue hostilities. This administrator, himself a black person, was successful in dispersing all combatants except the plaintiff Long who picked up a stool and menacingly held it as if to strike the administrator. This plaintiff, upon suggestion of the assistant principal, finally departed without further incident.

Because of the willful disobedience by these two plaintiffs of the lawful orders of school officials coupled with plaintiffs' prior record of school misconduct, these two plaintiffs were permanently expelled by the defendant school board.

■ After classes had been dismissed on that date a second incident involving an instructor and a group of black students including plaintiffs Small, Nance and Heatrice occurred in the school parking lot. It was these plaintiffs' conduct towards school administrators and teachers during these episodes which prompted the defendant school board, upon recommendation of the defendant Centers, to order their permanent expulsion from the public school system of Jackson County, Florida.

■ An instructor, Bell, had left the building to go out to the school parking lot to see if "everything was all right".

While he was returning to the building, Bell was met by a group of black students among whom were plaintiffs Small, Nance and Heatrice. He was soon confronted and surrounded by this throng. When Bell attempted some sort of evasive action, plaintiff Small blocked his path by extending his arms with clinched fists. As Bell turned to go again he was confronted by plaintiff Nance who was holding a piece of broken concrete as if to strike Bell with it. Meanwhile plaintiff Heatrice had joined in this harassment of Bell and was hurling a verbal attack at Bell which seemed to compound his dilemma. Luckily one of the school coaches happened on the scene and rescued Bell from his would-be-assailants and probably prevented Bell from being seriously injured.

A portion of plaintiff Small's testimony discloses that he had intended to hit Bell but had changed his mind. It was also testified that the group had decided to "pick on" Bell because of his "attitude" towards blacks.

■ As a result of the foregoing these plaintiffs were expelled because of disrespect for staff members and for threats to staff members. The Court finds that these plaintiffs were not disciplined for their involvement in the general fracas at the school on the morning of January 3, 1972. Many blacks and whites were involved in this disorder but culpability for this incident was attributed to neither side and no disciplinary action against the numerous participants was taken merely because they were involved in the fighting.

### EVENTS OF JANUARY 6, 1972

■ In the aftermath of the disruption at Marianna High School on January 3, 1972, there followed further disorder on January 6, 1972, wherein a group of black students blocked the hallways for a short time but were persuaded by the defendant Centers to meet with him to voice their grievances. Hav-

ing reached an impasse in their discussion with defendant Centers, they were given the alternative of returning to class or to return home and to receive unexcused absences. The group elected to leave school and attempted to enlist the support of other black students who were in their respective homerooms and not in attendance at the meeting with the defendant Centers. This action caused further disruption in the school and many of these students were suspended from school as a result of their conduct. These suspensions are not before this Court for review at this time.

Upon their departure from the school premises these students began a march towards downtown Marianna to the superintendent's office. As the march progressed plaintiffs Smith and Sweet, among others, were arrested by local law enforcement personnel and placed under arrest for disorderly conduct. Disposition of these criminal charges is presently pending in the County Judge's Court in and for Jackson County, Florida.

■ There has been no showing at this hearing on motion for preliminary injunction that the defendant Roberts has maintained the prosecution of these charges against plaintiffs Sweet and Smith in bad faith or for the purposes of harassment. The evidence also discloses that none of the named defendants has ever brought charges against these plaintiffs or that these two plaintiffs have been previously prosecuted for violation of the laws of Florida.

■ The plaintiff Pittman was placed on interim suspension for leaving the campus on January 6, 1972. He and his parents then met with defendant Centers on January 11, 1972, to discuss this plaintiff's suspension. His attitude at this conference was one of non-cooperation and non-participation. It was this plaintiff's behavioral pattern at this conference which caused the defendant Centers to believe that plaintiff Pittman would not cooperate with and

obey school authorities and prompted Centers to recommend expulsion. At the hearing held before the defendant school board on January 20, 1972, for which hearing plaintiff was duly noticed, he chose not to attend. It was this plaintiff's attitude of non-cooperation and prior record of misconduct which resulted in the board's permanent expulsion of plaintiff Pittman. This plaintiff also chose not to appear at the hearing before this Court.

## CONCLUSIONS OF LAW

■ This Court has jurisdiction over the subject matter of and the parties to this action. Title 28, United States Code, Section 1343(3); Title 42, United States Code, Section 1983.

■ ■ Plaintiffs Sweet and Smith have failed to prove actionable conduct on part of the defendant Roberts which would entitle them to the extraordinary injunctive relief which they seek. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Livingston v. Garmire, 442 F.2d 1322 (5th Cir. 1971); Star-Satellite, Inc. v. Rosetti, 441 F.2d 650 (5th Cir. 1971). Thus the relief sought as to the defendant Roberts should be denied.

■ The expulsions of plaintiffs Small, Nance, Heatrice, Long and Pittman from the Marianna High School are supported by a substantial factual basis and did not deprive these plaintiffs of equal protection under the law or due process of law.

■ These plaintiffs were afforded adequate notice of the expulsion hearing, they were represented by counsel and they were given the opportunity to confront their accusers and to cross-examine them. These procedures fully comport with the traditional notions of due process governing school disciplinary proceedings. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961); Wright v. Texas Southern University, 392 F.2d 728 (5th Cir. 1968). Due process is not affronted when stu-

dents are disciplined for violations of unwritten rules when such misconduct challenges lawful school authority and undermines the orderly operation of the school. Hasson v. Boothby, 318 F.Supp. 1183 (D.C.Mass.1970). See generally 45 F.R.D. 133 (W.D.Mo.1968). See also Bright v. Nunn, 448 F.2d 245 (6th Cir. 1971).

Likewise there is no evidence supportive of these plaintiffs' argument that defendants have denied them equal protection under the law by discriminating against black students in disciplining them while taking no such action against white students. The record before this Court simply does not bear out plaintiffs' contentions inasmuch as this Court finds that plaintiffs were disciplined for acts of specific misconduct in which white students were not directly involved. Thus the action of the defendant school board in finding these plaintiffs guilty of misconduct is warranted and found not to be constitutionally infirm. Tillman v. Dade County School Board, 327 F.Supp. 930 (S.D.Fla.1971).

In the instant proceeding expulsion resulted not because of fighting among students but because of specific acts of misconduct and disobedience. It is this Court's view that expulsion was warranted; however, the severity of the punishment meted out by the defendant school board does not appear commensurate with the severity of the acts committed and this Court is of the view that the expulsions should not be made permanent but that they be lifted after the present school year terminates.

Accordingly, it is

Ordered:

Motion for preliminary injunction be and the same is hereby denied.

The defendant school board is directed to modify the terms and conditions of plaintiffs' expulsions in conformity with the terms of this order.

Done and Ordered in Chambers in Tallahassee, Florida, this 22nd day of March, 1972.