Eartha L. ST. ANN, etc., et al.,
Plaintiffs-Appellants,

v.

Vincent PALISI, etc., et al.,
Defendants-Appellees.

No. 73–2558.

United States Court of Appeals,
Fifth Circuit.

June 6, 1974.

Rehearing Denied July 24, 1974.

William E. Rittenberg, Nils R. Douglas, Ronald P. Nabonne, New Orleans, La., for plaintiffs-appellants.

Franklin V. Endom, Jr., Samuel I. Rosenberg, New Orleans, La., for defendants-appellees.

Before TUTTLE, GEWIN and RONEY, Circuit Judges.

GEWIN, Circuit Judge:

On this appeal Mrs. Eartha St. Ann, individually and on behalf of her minor children, presents a substantive due process challenge to Orleans Parish School Board Regulation XIX [1] which allows school children to be suspended for their parents' misconduct. We vacate the district court's order of dismissal insofar as it relates to the claims of the minor plaintiffs and remand.

The challenge presented is prompted by the following occurrences. On September 27, 1972, the appellant's son, Maurice, received a three day suspension from his seventh grade classes at Martin Behrman Middle School because of excessive tardiness and absenteeism. The following day Mrs. St. Ann went to the school with her daughter, Lavida, in order to check her into school because she was tardy. While in the school office, she inquired about her son's suspension. A disagreement ensued between Mrs. St. Ann and the assistant principal, Mr. Achary. Mrs. St. Ann became en- raged and struck Mr. Achary on the face with her fist in which she was holding a key chain. As a consequence Mrs. St. Ann was charged with battery and pled guilty in Orleans Municipal Court.

Because of their mother's attack and pursuant to the aforementioned regulation, Mrs. St. Ann's two children were suspended from school by notices dated September 29, 1972. The principal, Vincent Palisi, recommended that the suspension be for an indefinite period of time. The District Superintendent, Mr. Monie, scheduled a conference concerning the suspensions for October 10th, but due to her change of address Mrs. St. Ann did not receive notice of the conference. When she failed to appear on October 10th, Mr. Monie telephoned her in an attempt to schedule another conference, but Mrs. St. Ann advised him that the matter had been referred to her attorney. She subsequently filed suit on October 13th.

At the district court's request a conference between the parties was held on October 25, 1972. The conference did not result in the children's reinstatement at Martin Behrman, however, because Mrs. St. Ann refused the school officials' demands for an apology. After this conference the two children were transferred officially to Karr School which they had been attending since October 17, four days after the suit was filed.

The district court concluded that "Regulation XIX does not abuse the discretion allowed to school authorities to formulate rules for the maintenance of discipline in the public schools,

---

1. Orleans Parish School Board Regulation XIX provides:

A parent or guardian dissatisfied with the conduct of any teacher toward his child or ward shall first lay his complaint before the teacher, and, if not satisfied, may appeal to the principal. The principal shall hear such complaints only in the presence of the teacher concerned. If the matter is not satisfactorily resolved, the parent or guardian may appeal to the assistant superintendent in charge of the district, who shall hear the case only in the pres- ence of the principal and teacher. *Should the principal or teacher be called to account or be reproved in an offensive manner in the classroom or elsewhere verbally or in writing, by a parent or guardian, the child or ward of such parent or guardian shall, by reason of such conduct, be liable to suspension or other punishment.* Said suspension or other punishment shall not be made until after the parent or guardian has refused to make proper amends. (Emphasis added)

. . . ." Accordingly, Regulation XIX was held not to violate the substantive due process guarantee of the fourteenth amendment and the complaint was dismissed with prejudice.

■ As the district court indicated, school principals must be given considerable freedom to achieve effective school administration, but courts should not hesitate to act when fundamental constitutional liberties are contravened.[2] Freedom from punishment in the absence of *personal* guilt is a fundamental concept in the American scheme of justice. In order to intrude upon this fundamental liberty governments must satisfy a substantial burden of justification.[3] Since the school officials have failed to meet this burden we must vacate the district court's order of dismissal with prejudice with respect to the claims of the minor plaintiffs, and remand for proceedings consistent with this opinion.[4]

I

■ The due process clause of the fourteenth amendment protects from state encroachment those fundamental concepts of justice which lie at the base of our civil and political institutions.[5] It is established beyond question that these substantive due process rights are not limited to those liberties specifically enumerated in the Bill of Rights.[6] The rights of marital privacy[7] and interstate travel[8] are but two examples of protections which arise from a free society but are not explicitly mentioned in the Constitution. The appellant contends that predicating punishment only upon personal guilt is such a fundamental notion that it should be placed in the same category. The school's policy which attributes a parent's misconduct to other family members is asserted to be guilt by association wholly alien to American liberty.

■ Substantial Supreme Court authority supports the appellant's contentions. Traditionally, under our system of justice punishment must be founded upon an individual's act or omission, not from his status,[9] political affiliation or domestic relationship. This principle has often been recognized by the Court in cases involving membership in subversive organizations. In Scales v. United States[10] Justice Harlan emphasized the personal guilt requirement:

> In our jurisprudence guilt is personal, and when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity

2. Murray v. West Baton Rouge Parish School Board, 472 F.2d 438, 444 (5th Cir. 1973).

3. Karr v. Schmidt, 460 F.2d 609, 615, n. 12 (5th Cir. 1972) (En Banc).

4. Nothing we say should be construed as an approval of Mrs. St. Ann's conduct. This opinion relates entirely to the rights of the minor plaintiffs she represents, her two children. Mrs. St. Ann has not asserted or demonstrated any error by the district court in dismissing her individual claim; therefore we affirm that portion of the order.

5. Powell v. Alabama, 287 U.S. 45, 67, 53 S. Ct. 55, 63, 77 L.Ed. 158, 169 (1932).
  In determining which rights are fundamental, judges are not left at large to decide cases in light of their personal and private notions. Rather, they must look to the "traditions and [collective] conscience of our people" to determine whether a

principle is "so rooted [there] * * * as to be ranked as fundamental." Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S. Ct. 330, 332, 78 L.Ed. 674, 677 (1934).
Griswold v. Connecticut, 381 U.S. 479, 493, 85 S.Ct. 1678, 1686, 14 L.Ed.2d 510, 520 (1965) (Goldberg, J. concurring).

6. Karr v. Schmidt, 460 F.2d 609, 614 (5th Cir. 1972) (En Banc).

7. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

8. Shapiro v. Thompson, 394 U.S. 618, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969).

9. *See* Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (State cannot make the "status" of narcotic addiction a criminal offense).

10. 367 U.S. 203, 224, 225, 81 S.Ct. 1469, 1483, 1484, 6 L.Ed.2d 782, 799 (1961).

. . ., that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment.[11]

Further evidence of judicial solicitude for the concept of personal guilt appears in the Court's acknowledgement that the indiscriminate classification of innocent with knowing activity must likewise fall as an impermissible assertion of arbitrary power.[12] Accordingly, a state cannot punish innocent membership in a group without regard for the accused's knowledge of the nature of the group.[13]

Moreover, personal guilt has not been confined to problems involving political associations. In Levy v. Louisiana [14] an equal protection violation was found when illegitimate children were denied an opportunity to pursue an action for the death of their mother under the Louisiana wrongful death statute. The illegitimate children were not to be deprived due to the indiscretion of their parents.[15] Recently Louisiana's workmen's compensation laws which discriminated against illegitimate dependents were invalidated on similar grounds.[16] Writing for the Court, Justice Powell stated:

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible laisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust.

Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as unjust—way of deterring the parent.[17]

## II

These Supreme Court pronouncements provide ample indication that personal guilt is a fundamental element in the American scheme of liberty. The appellees do not forcefully dispute this conclusion. Rather they assert, for a variety of reasons, that personal guilt considerations are inappropriate here.

Initially the appellees contend that substantive due process is not applicable unless a federal statutory or constitutional right is being violated. Furthermore, they claim that since San Antonio School District v. Rodriguez,[18] it has been settled that the right to a public education is not a right guaranteed by the Constitution or by Congress. Therefore, appellees conclude that substantive due process cannot be applicable here because no right is being violated.

This syllogism is, of course, irrelevant and erroneous and must be rejected. The argument is irrelevant because the children do not complain that they were denied the constitutional right to an education, but that they were punished

---

11. The restraints imposed upon legislation by the due process clause of the fifth and fourteenth amendments are generally considered the same. Heiner v. Donnan, 285 U.S. 312, 326, 52 S.Ct. 358, 361, 76 L.Ed. 772, 779 (1932). Even if different constructions of the provisions may be proper in appropriate cases there is no indication that such a distinction is relevant here.

12. Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 218, 97 L.Ed. 216, 222 (1952).

13. Id. The concept has been further refined to require a showing of a specific intent to assist in achieving an organization's unlawful ends. Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966).

14. 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

15. See also Glona v. American Guar. and L. Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L. Ed.2d 441 (1968). But cf. Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971).

16. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).

17. Id. at 175, cited with approval Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583, 591 (1973).

18. 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

without being personally guilty. Thus a cardinal notion of liberty is involved and substantive due process is applicable. Secondly, the appellees are in error if they regard *San Antonio* as granting the states the power to arbitrarily deny individuals the right to a public education. Finding that education was not a right explicitly or implicitly protected by the Constitution was merely the Court's analysis of why education is not regarded as fundamental for purposes of "strict scrutiny" under the equal protection clause.[19]

Appellees also argue that there has been no punishment without personal guilt present here because there has been, in fact no punishment. The suspension and transfer were allegedly not designed to punish the St. Ann children. According to school authorities these actions were taken in order to maintain discipline and decorum at the Behrman School. This argument, however, is belied by the language of Regulation XIX itself. It provides:

> Should the principal or teacher be called to account or be reproved in an offensive manner in the classroom or elsewhere, verbally or in writing, by a parent or guardian, *the child or ward of such parent or guardian shall, by reason of such conduct, be liable to suspension or other punishment.* (emphasis added)

Furthermore, this court has recognized that a lengthy suspension does constitute a serious punishment, the imposition of which must be preceded by a due process hearing.[20] Since the regulation provides for punishment and the St. Ann children were in fact suspended and transferred, the conclusion is inescapable that punishment resulted. The motives of the school officials are not controlling.

### III

Having established a significant encroachment upon a basic element of due process, the state, in order to justify this encroachment, must satisfy a *substantial* burden.[21] In order to assess the strength of the school officials' interest one must examine the circumstances allegedly creating the need for such a regulation and the reasonableness of the methods used. The school officials argue that Regulation XIX facilitates preservation of discipline and decorum in the schools. We do not question either the necessity or authority of the Orleans Parish School Board in establishing regulations and rules for the maintenance of discipline and decorum in its schools. But the focus must be more narrow here. One must analyze the compelling reason for a regulation which punishes a child for the misconduct of the parent. It should be noted that the school officials commendably do not appear to argue that such a regulation will deter parental misconduct. Rather the argument appears to be that all children tend to ridicule a teacher who is insulted or attacked by a parent, and that if the children of the offending parent are removed from the school the

19. Indeed the Court mentioned with approval several cases that have held the right to acquire useful knowledge a constitutionally protected liberty. *Id.* at 30.

20. Black Students v. Williams, 470 F.2d 957 (5th Cir. 1972). Ten days was held to be a substantial period of suspension so as to require a due process hearing.

21. Griswold v. Connecticut, 381 U.S. 479, 504, 85 S.Ct. 1678, 1692, 14 L.Ed.2d 510, 527 (1965) (White, J., concurring), *quoting* Bates v. City of Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480, 486 (1960) ; Karr v. Schmidt, 460 F.2d 609, 615, n. 12 (1972).

The United States Supreme Court has consistently distinguished between regulatory statutes in the economic sphere and those which are aimed at restricting more personal freedoms. In the case of economic regulation, the Court has stated that a "rational basis" for the legislation will suffice to meet the constitutional requisites of due process ; on the other extreme, a clear and present danger to the public safety is required to justify a restriction on the first amendment right to free speech. (footnotes omitted).
Note, A Constitutional Caveat on the Vicarious Liability of Parents, 47 Notre Dame Lawyer 1321, 1325 (1972).

ridicule will allegedly cease and discipline and teacher authority will be restored.

Initially the premise upon which this argument is based might be challenged; for an arbitrary exercise of the power to punish may do more to destroy respect for those in authority than to restore it. This is, however, essentially a legislative judgment, and if it were the only weakness in the appellees' argument we would not substitute our judgment for that of a legislative body without further evidence.[22] Nevertheless, there are further indications that Regulation XIX was less than essential. This court was informed upon oral argument that the Orleans Parish School Board has abolished Regulation XIX subsequent to the district court judgment.[23] The repeal itself supports the contention that the challenged regulation is not completely indispensable even if it may arguably serve to restore an offended teacher's authority.

After an examination of the exigency for the questioned regulation, an inquiry should be made as to the existence of reasonable alternative means for fulfilling that need.[24] Non-students upon school property can be controlled or excluded by local regulations. Persistent violators may be enjoined or prosecuted under state law. Those who attack school officials are subject to state civil and criminal penalties just as Mrs. St. Ann was in the instant altercation. These are traditional and effective remedies for school officials who are disturbed by non-students. All these remedies place restraint on the offending individuals, not on the innocent members of the family. School officials can be relatively certain that news of such remedies will reach the school children, and perhaps the children will realize that the remedy did not arise from the arbitrary use of power but from the traditional precepts of justice in our society.

Since there are alternative paths to restoring teacher authority, and since Regulation XIX is not justifiably or reasonably necessary we must hold that the school officials have been unable to demonstrate a compelling governmental interest. Therefore, this inroad upon the theory of personal guilt cannot be sustained. Even if the challenged regulation were only to be tested against the "mere rationality" standard[25] its constitutionality would be a matter of serious concern. The question would then become whether the regulation is a rational means of advancing a valid state interest.[26] The state may find it difficult to show by more than testimonial surmise that punishment of this type actually creates a better educational atmosphere. Furthermore, statutes that make parents liable for the misconduct of their children have been similarly criticized as irrational and violative of personal guilt.[27] At least in parent-child cases, however, the parent arguably has the power and duty to control his children. Clearly the children do not have the same opportunity.

22. See p. 428 *infra*.

23. The appellants seek an award of monetary damages as well as declaratory and injunctive relief. The repeal of Regulation XIX may indeed moot all claims except that for monetary damages. *See* Nat'l Lawyers Guild, Univ. of Texas Chapter v. Bd. of Regents of the Univ. of Texas Sys., 490 F.2d 97 (5th Cir. 1974) and the cases cited therein.

24. An inquiry into reasonable alternative means to achieve a goal is an appropriate inquiry when analyzing a fourteenth amendment due process challenge. In Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed. 2d 63 (1973) the Court held that Connecti-

cut could not create an irrebuttable presumption of nonresidence for college tuition purposes when the state had *reasonable alternative means* for determining residence. *Id.* at 452.

25. *See* note 21 *supra*.

26. *E. g.* Thompson v. Gallagher, 489 F.2d 443 (5th Cir. 1973).

27. *See* Note, A Constitutional Caveat on the Vicarious Liability of Parents, 47 Notre Dame Lawyer 1321 (1972); *cf.* Hippard, The Unconstitutionality of Criminal Liability Without Fault: An Argument for a Constitutional Doctrine of Mens Rea, 10 Hous.L. Rev. 1039 (1973).

## Conclusion

Because the school officials cannot justify this infringement of a fundamental liberty guaranteed by the due process clause of the fourteenth amendment, we vacate the order of the district court dismissing the appellants' case insofar as it relates to the claims of the minor plaintiffs and remand for proceedings consistent with this opinion. We only hold that the court committed error in dismissing the appellant's complaint on behalf of the minor plaintiffs and make no suggestion or intimation with respect to the value or lack of value of her claim for monetary damages on their behalf. That issue must be decided by the district court in the first instance.

Vacated and remanded.

RONEY, Circuit Judge (dissenting):

I respectfully dissent. Virtually all of the cases cited in the majority opinion for the principle that one is constitutionally entitled to be free from punishment in the absence of personal guilt are criminal cases. This is not a criminal case. The remaining cases cited did not involve misdirected punishment but were decided because the state statutes involved suffered the vice of vagueness or established a classification which had no rational relationship to the purpose of the statutes. The civil law is replete with the concept of vicarious liability from strict liability for torts to the present era of legislation which frequently visits severe civil responsibility for conduct of another and where the one who is called upon to respond is totally without fault.

The idea that transfer of a student from one class to another or from one school to another is punishment in a criminal vein runs absolutely contrary to the law in this Circuit which has transferred from class to class and school to school wholesale numbers of children without any regard to the detriment this may have caused in individual social, economic and educational terms. Their transfer is certainly through no fault of their own and the result has sometimes adversely affected individual lives, but we have never yet conceived this to be "punishment" in the terms unveiled in the majority opinion.

I cannot agree that a state school must show a compelling governmental interest in a precise rule of discipline. A school has a compelling interest in maintaining discipline and any rational rule to achieve that end should meet the constitutional test. I doubt very much that any rule of discipline could ever be defended in terms of a compelling interest in the exact rule. There are generally viable alternatives to almost every course of human conduct, however rational that conduct may be. The test should be whether the rule meets the Government interest in a rational way.

Finally, I cannot conceive of much education transpiring between a student and a teacher who has just been struck by the student's parent in front of classmates and who is prosecuting the parent in criminal proceedings. Removing the student from that class and perhaps from the school might be not only the kindest thing to do for all parties but the best way to promote the educational interest of the particular student as well as that of all other students in the class. The "suspension" was merely a mechanical avenue to that end. Although I might not subscribe to such a rule as is challenged in this case, I can find no appropriate legal base to support the claim of unconstitutionality.

None of the findings of fact of the District Judge being clearly erroneous, I would affirm his order, attached to this dissent as an appendix, dismissing the suit on the ground that no federal right was violated by the defendants.

### APPENDIX TO DISSENT

### ORDER

This is a suit by Mrs. St. Ann individually and on behalf of her minor children, Maurice and Lavida, against the principal and assistant principal of Mar-

tin Behrman Middle School, the Superintendent of the Orleans Parish Public Schools, and the members of the Orleans Parish School Board. Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4), and 28 U.S.C. §§ 2201 and 2202, and damages pursuant to 42 U.S.C. § 1983. (Plaintiff's demands for the convening of a three judge court and for the bringing of a class action were previously denied by the Court.) Plaintiff asks that the court (1) declare unconstitutional the provisions of L.R.S. 17:416 relative to the discipline, suspension, and expulsion of pupils from Louisiana public schools [1]; (2) enjoin the enforcement of L.R.S. 17:416; (3) declare unconsti-

1. L.R.S. 17:416 provides:

§ 416. Discipline of pupils; suspension; expulsion

A. Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school or on the playgrounds of the school, on the street or road while going to or returning from school, or during intermission or recess. School principals may suspend from school any pupil who is guilty of willful disobedience; who treats with intentional disrespect a teacher, principal, superintendent, member or employee of the local school board; who makes against any one of them an unfounded charge; who uses unchaste or profane language; who is guilty of immoral or vicious practices, or of conduct or habits injurious to his associates; who uses tobacco or alcoholic beverages in any form in school buildings or on school grounds; who disturbs the school and habitually violates any rule; who cuts, defaces or injures any part of public school buildings, or any property belonging to said buildings; or who writes any profane or obscene language or draws obscene pictures in or on any school material or on any public school premises, or on any fence, pole, sidewalk or building on the way to or from school; or who is found carrying firearms, knives, or other implements which can be used as weapons, the careless use of which might inflict harm or injury; or who throws missiles on the school grounds liable to injure other pupils, or who instigates or participates in fights while under school supervision; or who violates traffic and safety regulations; or who leaves the school premises without permission; or who leaves his classroom during class hours or detention without permission; or who is habitually tardy or absent; or who commits any other serious offense. Notice in writing of the suspension and the reasons therefor shall be given to the parent or parents of the pupil suspended. Any parent of a pupil suspended shall have the right to appeal to the parish superintendent of schools, who shall conduct a hearing on the merits. The decision of the superintendent of schools on the merit of the case, as well as the term of suspension, shall be final, reserving the right to the superintendent of schools to remit any portion of the time of suspension. A pupil suspended for damages to any property belonging to the school system shall not be readmitted until payment in full has been made for such damage or until directed by the superintendent of schools.

B. Any student after being suspended for committing any of the above offenses may be expelled, upon recommendation by the principal of the public school in which said student is enrolled, which recommended expulsion shall be subject to the provisions of Subsection (C) hereof.

Any student after being suspended on three occasions for committing any of the above offenses, during the same school session, shall on committing the fourth such offense, be expelled from the public schools of the parish wherein he resided until the beginning of the next regular school session, subject to the review and approval of the local school board.

C. Upon the recommendation by a principal for the expulsion of any student as authorized by Subsection (B) hereof, a hearing shall be conducted by the superintendent or by any other person designated so to do by the superintendent. Upon the conclusion of the hearing, the superintendent, or his designate, shall determine whether such student shall be expelled from the school system or if other corrective or disciplinary action shall be taken. At said hearing the principal and/or teacher concerned may be represented by any person appointed by the superintendent. Until such hearing takes place the student shall remain suspended from the school. At such hearing the student may be represented by any person of his choice.

The parent or tutor of the pupil may, within five days after the decision is rendered, request the city or parish school board to review the findings of the superintendent or his designate at a time set by the school board; otherwise the decision of the superintendent shall be final. If requested, as herein provided, and after reviewing the findings of the superintendent or his designate, the school board may affirm, modify or reverse the action previously taken.

The parent or tutor of the pupil may, within ten days, appeal to the district court for the parish in which the student's school

tutional Orleans Parish School Board Regulation XIX which allows suspension of a child from school following disruptive acts by the parent at the school [2] and enjoin enforcement of that regulation; (4) declare the suspension and expulsion policies of the Orleans Parish School Board unconstitutional and enjoin expulsion and suspension of students from Orleans Parish Schools without prior notice and hearing; and (5) award plaintiff monetary damages for allegedly illegal suspensions.

An evidentiary hearing was held on February 13, 1973. After careful consideration of all testimony and other evidence produced at hearing, it is the opinion of the Court that, according to the applicable law, plaintiff has failed to prove any deprivation of any federally protected right, and therefore, all plaintiff's claims being without merit, no injunction should issue and the matter should be dismissed, each party to bear its own costs.

## FACTS

On September 27, 1972, Maurice St. Ann, the 14 year old son of plaintiff Mrs. St. Ann, was suspended for a period of three days from his seventh grade classes at Martin Behrman Middle School because of excessive tardiness and class cutting. Maurice was sent home with a written notice of his suspension and the reasons therefor. This suspension is not at issue in this suit.

On the following day, September 28, 1972, Mrs. St. Ann went to the school with her daughter Lavida, also a seventh grade student at Martin Behrman, who was tardy, in order to check the child into school. While she was in the school office, Mrs. St. Ann inquired about her son's suspension. She was told by Mr. Achary, the assistant principal, that the usual procedure for a three day suspension was a conference with the parent at the end of the three day period, but that if she would be seated he would speak with her as soon as he finished talking with several students who were in his office at that time. At this point, according to Mrs. St. Ann, Mr. Achary called her son a liar, which fact is denied by Mr. Achary. At any rate, Mrs. St. Ann became enraged and struck Mr. Achary on the face with her fist in which she was holding a number of keys on a chain.

Following the incident on the morning of September 28th, both the St. Ann children were suspended from school. The suspension form issued, identical in form to the one previously issued for Maurice's three day suspension, states

---

is located, from an adverse ruling of the school board in upholding the action of the superintendent or his designate. The court may reverse or revise the ruling of the school board upon a finding that the ruling of the board was based on an absence of any relevant evidence in support thereof.

D. The conviction of any student of a felony or the incarceration of any student in a juvenile institution for an act which had it been committed by an adult, would have constituted a felony, shall be cause for expulsion of the student for a period of time as determined by the board; provided that such expulsion shall require the vote of two-thirds of the elected members of the school board.

Amended by Acts 1970, No. 194, § 1; Acts 1970, No. 306, § 1.

2. Orleans Parish School Board Regulation XIX provides:

### SECTION XIX
### COMPLAINT PROCEDURE

A parent or guardian dissatisfied with the conduct of any teacher toward his child or ward shall first lay his complaint before the teacher, and, if not satisfied, may appeal to the principal. The principal shall hear such complaints only in the presence of the teacher concerned. If the matter is not satisfactorily resolved, the parent or guardian may appeal to the assistant superintendent in charge of the district, who shall hear the case only in the presence of the principal and teacher. Should the principal or teacher be called to account or be reproved in an offensive manner in the classroom or elsewhere, verbally or in writing, by a parent or guardian, the child or ward of such parent or guardian shall, by reason of such conduct, be liable to suspension or other punishment. Said suspension or other punishment shall not be made until after the parent or guardian has refused to make proper amends.

"mother's attack on principal" as the reason for the suspension and that the period of the suspension was "recommended indefinite". The notices, dated September 29, 1972, were signed by Vincent Palisi, principal of Martin Behrman, and noted that a copy of the form would be forwarded to the district superintendent. Lavida's suspension form was brought home by her on the day of the incident, and Maurice's was sent through the mail.

On October 2, 1972, the Monday following the children's suspension, a letter was sent to Mrs. St. Ann at 1914 Murl Street by District Superintendent John F. Monie, advising her that a conference would be held with reference to her children's suspensions on Tuesday, October 10, 1972 at 8:45 a. m. (at which time the children would have been out of school for seven days). Mrs. St. Ann and her children did not appear on the date of the conference. Mr. Monie then telephoned Mrs. St. Ann, who advised him that she had not received the notice of the conference, due to a change of address to 1817 Joann Place. She further stated in response to Mr. Monie's attempt to set up another conference that she did not wish to confer as the matter was in the hands of her attorney. On October 12, 1972, Mr. Monie again wrote Mrs. St. Ann, with copies sent to both the Murl and the Joann addresses, stating that Mrs. St. Ann should contact Mr. Monie "with the view of returning your children to a school", giving the telephone number of Mr. Monie's office, and noting that a call to the office would result in the rescheduling of the conference. This suit was filed on October 13, 1972.

Subsequent to the filing of the suit, and at the request of the Court, a conference between the various interested parties was held on October 25, 1972. The conference did not result in reinstatement of the children in Martin Behrman because of plaintiff's refusal to apologize for her actions on September 28th; however, after a conference between the Court and the parties, the children were transferred officially to Karr School—which they had in fact been attending since October 17, 1972. The children have been attending Karr School throughout the pendency of this suit, having missed approximately 12 days of school as a result of the suspension at issue. Karr School is approximately the same distance from the children's home as Martin Behrman, and Maurice and Lavida, who are black, are now attending a school which is predominantly white (60%) as opposed to Martin Behrman, which, according to Mr. Monie, is 80% black. However, the transfer to Karr School is not felt to be satisfactory to plaintiff because of the alleged unavailability of free transportation to Karr and due to the children's preference for Martin Behrman.

It is plaintiff's position that the regulation pursuant to which her children were suspended was unconstitutional per se and that, in addition, a hearing should have been afforded prior to any suspension. Defendants contend that Regulation XIX is a necessary one for the maintenance of discipline in the public schools and is well within the power of the school board to enact. It is further argued that a prior hearing is not required for suspensions of short duration, that a hearing was arranged within a reasonable time, and that the reason that a prompt hearing was not in fact held as scheduled was the result of a good faith error as to the address of Mrs. St. Ann and the failure of Mrs. St. Ann herself to cooperate after the address problem was rectified.

### CONCLUSIONS OF LAW

1. L.R.S. 17:416 and the Orleans Parish School Board regulations which track its provisions are not unconstitutional on their face, Murray v. West Baton Rouge Parish School Board, (C.A.5, 1973), 472 F.2d 438, nor has plaintiff presented any evidence that they were unconstitutionally applied in the instant case.

2. Orleans Parish School Board Regulation XIX does not abuse the discre-

tion allowed to school authorities to formulate rules for the maintenance of discipline in the public schools, and the procedures following the suspensions of the St. Ann children pursuant to Regulation XIX did not violate Due Process. This regulation was enacted by the Orleans Parish School Board pursuant to L.R.S. 17:81 which authorizes each school board to:

"... make such rules and regulations for its own government, not inconsistent with law or with the regulations of the Louisiana State Board of Education, as it may deem proper."

L.R.S. 17:81 is made applicable to the Orleans Parish Board by L.R.S. 17:122 which provides:

§ 122. Application of general laws and regulations of state board of education

All laws, and all rules and regulations of the state board of education governing other parish school boards throughout the state, shall govern the Orleans Parish School Board, except as otherwise specifically provided in this Title. As amended Acts 1960, 3rd Ex.Sess., No. 4, § 1.

According to testimony given at the hearing in this matter, the reason for Regulation XIX is that incidents involving parents and teachers on school property, such as the one involving Mr. Achary and Mrs. St. Ann, tend to materially disrupt discipline on the school grounds. Children tend to ridicule a teacher who is insulted or attacked by a parent, and such incidents result in a breakdown of discipline in the public schools. According to the school officials who testified in the instant case, if a parent makes amends for the disruptive conduct, the child is not penalized. In the event that the parent refuses to apologize, as did Mrs. St. Ann, the child is transferred to another school where the parent's conduct is not known. It is further stated by the school officials that the term "indefinite suspension" as used on the suspension forms issued to the St. Ann children is merely the recommendation of the school principal to the district superintendent who will be the person who actually makes the decision after a conference with the parent and the school principal or teacher.

School officials have a wide margin of discretion in formulating school disciplinary rules, and school disciplinary codes cannot be drawn with the same precision as criminal codes. Burnside v. Byars, 363 F.2d 744 (C.A.5, 1966); Murray v. West Baton Rouge Parish School Board, *supra*. It is the Court's opinion that the school officials in the instant case have demonstrated a need for a rule such as Regulation XIX in the public schools. There has been no evidence that this rule is or was intended to keep a child out of school, and the rule itself provides that no action is to be taken against the child unless the parent fails to make amends.

The procedure followed with respect to the suspensions of the St. Ann children is within constitutional limits. No prior hearing is required for a suspension of up to ten days. Sullivan et al. v. Houston Independent School District, 475 F.2d 1071, (C.A.5, 1973), citing Banks v. Bd. of Public Education, 314 F.Supp. 285 (S.D.Fla.) vacated for entry of a single judge order, 401 U.S. 988, 91 S.Ct. 1223, 28 L.Ed.2d 526 (1971), aff'd after remand, 450 F.2d 1103 (C.A.5, 1971). In the instant case the initial hearing was set up by letter dated the next working day following the suspensions by the district superintendent and scheduled to take place less than ten days following the initial suspension. The fact that the hearing was not held as planned on October 10th was not due to any fault of the school officials. The failure to have a hearing at any time following October 10th, pursuant to Mr. Monie's phone call and letter of October 12th, were due to the refusal of the mother to assent to a conference. For these reasons it cannot be held that the school board acted in violation of procedural due process in this matter. Sullivan et al. v. Houston Indep. School District, *supra*.

**434**

Therefore, there having been no showing of facts sufficient to prove any constitutional deprivation to plaintiffs, it is ordered that plaintiff's case be dismissed with prejudice, each party to bear its own costs.

Let judgment issue accordingly.

New Orleans, Louisiana, this 25th day of April, 1973.

s/ R. BLAKE WEST
_____
United States District Judge