Anibal SOTTO, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Secretary, Department of Corrections, Respondent-Appellant.

Joaquin A. AMOR, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Secretary, Department of Corrections, Respondent-Appellant.

No. 79–1003.

United States Court of Appeals, Fifth Circuit.

Aug. 22, 1979.

Rehearing and Rehearing En Banc Denied Sept. 28, 1979.

Before WISDOM, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

In this habeas corpus action, we must decide the constitutionality as applied of Florida's Rule of Criminal Procedure 3.800(b), which governs the reduction of sentences by the state's trial courts. The district court, adopting the report of a United States magistrate, held that strict application of the rule had denied petitioners "fundamental due process" and accordingly granted relief. However, we conclude that the rule's application in this case did not violate the Constitution and therefore reverse.

## I. Background

On March 25, 1975, in the Circuit Court (trial court) for Dade County, Florida, petitioners Anibal Sotto and Joaquin Amor were convicted of aiding or assisting in conducting a lottery, possession of lottery tickets and possession of lottery paraphernalia and sentenced to three years in prison. After Florida's Third District Court of Appeal affirmed the convictions, *Soto v. State*, 325 So.2d 414 (Dist.Ct.App., 1976), Sotto and Amor petitioned the Florida Supreme Court for writs of certiorari; the court denied the petition on July 30, 1976. *Sotto v. State*, 336 So.2d 1184 (Fla., 1976).

Pursuant to Fla.R.Crim.P. 3.800(b), on September 23, 1976 petitioners filed in the trial court a motion to mitigate their sentences. Under the version of Rule 3.800(b) then in force,

A court may reduce a legal sentence imposed by it at the same term of court at which it has been imposed, or if such term ends less than sixty days after the imposition of the sentence, then within sixty days after such imposition, or within sixty days after receipt by the court of a mandate issued by the appellate court upon affirmance of the judgment and/or sentence upon an original appeal, or with-

Steven R. Jacob, Asst. Atty. Gen., Miami, Fla., for respondent-appellant.

Geoffrey C. Fleck, Miami, Fla., for petitioner-appellee.

in sixty days after receipt by the court of a certified copy of an order of the appellate court dismissing an original appeal from the judgment and/or sentence, or, if further appellate review is sought in a higher court or in successively higher courts, then within sixty days after the highest state or federal court to which a timely appeal has been taken under authority of law, or in which a petition for certiorari has been timely filed under authority of law, has entered an order of affirmance or an order dismissing the appeal and/or denying certiorari.[1]

The court scheduled a hearing on the motion to reduce sentences for September 29, 1976. Judge George Orr, who had presided over petitioners' trial, had since been transferred to another division of the court, with Judge Paul Baker assuming his caseload, and a question arose at the hearing as to which judge should rule on the motion. The Chief Judge of the Dade County Circuit Court determined that Judge Baker should handle the matter and directed him to review the case file, trial testimony and presentence investigation report. Judge Baker ordered delivery of the case file and presentence report and rescheduled the hearing for November 22, 1976. On that date, the presentence report had still not been provided; the judge instructed counsel to supply a trial transcript and postponed the hearing until November 24. Neither the report nor the transcript was delivered by that date, however, so the judge reset the hearing for December 7. After reviewing the trial transcript and presentence investigation report, the court conducted the hearing on December 7 and granted petitioners' motion to reduce sentence. Thus, the court's decision came long after the expiration of sixty days from the denial of certiorari by the Florida Supreme Court. The judge vacated Sotto's three-year prison sentence, placing him on five years' probation and ordering payment of a $5,000 fine, and also vacated Amor's prison term, sentencing him to one year in the County Jail and requiring payment of a $3,500 fine.[2]

The State of Florida, through its official custodian, respondent Wainwright, petitioned Florida's Third District Court of Appeal for a writ of certiorari, contending that under Rule 3.800(b) the trial court lacked jurisdiction to rule on petitioners' motion to reduce sentence, because more than sixty days had passed since the Florida Supreme Court's denial of certiorari on direct review

1. Rule 3.800(b) was amended, effective July 1, 1977, to provide as follows:

A court may reduce a legal sentence imposed by it within sixty days after such imposition, or within sixty days after receipt by the court of a mandate issued by the appellate court upon affirmance of the judgment and/or sentence upon an original appeal, or within sixty days after receipt by the court of a certified copy of an order of the appellate court dismissing an original appeal from the judgment and/or sentence, or, if further appellate review is sought in a higher court or in successively higher courts, then within sixty days after the highest state or federal court to which a timely appeal has been taken under authority of law, or in which a petition for certiorari has been timely filed under authority of law, has entered an order of affirmance or an order dismissing the appeal and/or denying certiorari.

This section of the rule shall not, however, be applicable to those cases in which the death sentence is imposed or those cases where the trial judge has imposed the minimum mandatory sentence or has no sentencing discretion.

The Committee Note explains that "[t]his amendment provides a uniform time within which a defendant may seek a reduction in sentence and excludes death and minimum mandatory sentences from its operation."

2. The trial judge was "not unmindful" of Florida state court decisions holding that a court loses jurisdiction if it fails to rule on a motion to mitigate within the sixty-day period. However, he asserted that "the circumstances in the instant case differ inasmuch as the pre-sentence investigation had been misplaced and the trial transcript had to be obtained from the District Court of Appeal and then reviewed before the Court could make an intelligent ruling. The state argues that regardless of the delay or what may have caused it the Court lost jurisdiction to consider the motion to mitigate on December 7, 1976. This Court reasoned that the defendants should not be prejudiced because of a delay over which they had no control. It was not the fault of the defendants that the pre-sentence investigation was misplaced nor was it their fault that the Court had to consider a lengthy transcript. Prior to ruling, the Court considered these exceptional circumstances and proceeded to hear argument on the motion to mitigate."

before the trial court entered its order reducing the sentences of petitioners. The District Court of Appeal granted the writ and agreed that Rule 3.800(b) allowed a trial court to reduce a legal sentence only "within sixty days after the imposition of sentence or within sixty days after the highest state or federal court, to which a timely appeal or petition for writ of certiorari has been taken, has entered an order of affirmance, an order dismissing the appeal or an order denying certiorari." Citing a long line of consistent Florida state court decisions, the court said that "[t]he law is clear that a trial court . . . lacks the jurisdiction to mitigate a legal sentence after the above sixty day periods have elapsed" and observed that "[s]ince this is a jurisdictional matter, we must of necessity reject the defendants' contentions which seek to excuse the trial court's delay in mitigating the sentences." The District Court of Appeal therefore quashed the trial court's mitigation order and reinstated the original three-year prison terms. *State v. Sotto*, 348 So.2d 1222, 1223–24 (Dist.Ct. App., 1977). The Court of Appeal rejected Sotto and Amor's petition for rehearing and the Florida Supreme Court subsequently denied certiorari, thereby exhausting petitioners' state remedies. *Sotto v. State*, 359 So.2d 1219 (Fla., 1978).

On August 16, 1978, Sotto and Amor filed in the United States District Court for the Southern District of Florida the habeas corpus petition involved in this appeal. They alleged that Florida R.Crim.P. 3.800(b) as applied had "worked an intolerable injustice upon the petitioners in this case," violating their rights to equal protection and counsel, inflicting cruel and unusual punishment and denying them both procedural and substantive due process.

A United States magistrate entered a report on November 3, 1978, recommending

that the district court afford petitioners relief. The magistrate relied primarily upon our recent decision in *United States v. Mendoza*, 5 Cir., 1978, 565 F.2d 1285, modified on rehearing en banc, 581 F.2d 89, interpreting Fed.R.Crim.P. 35, the federal counterpart to Florida's Rule 3.800(b), to conclude that petitioners had been denied "fundamental due process." Calling it "neither fair nor just" that "defendants who are fortunate enough to file their motions when the Court is in a position to rule promptly will have their cause heard," while "those less fortunate will find the door of the Court barred," he urged the district court to allow the Florida trial court "a reasonable time in which to enter its Order upon the petitioners' motion for reduction of sentence, failing which the writ shall issue." In an order dated November 16, the district judge approved the magistrate's report and directed the Florida trial court to "enter its order upon the petitioners' motions for reduction of sentence on or before December 31, 1978, or the petitioners will be discharged."

The state, through its official custodian, appeals the district court's November 16 order.

## II. *Fla.R.Crim.P. 3.800(b) Does Not Violate the Constitution*

### A. *The Inapplicability of United States v. Mendoza*

Though petitioners have challenged the constitutionality of Rule 3.800(b) on a variety of grounds, they have concentrated on their substantive due process claim, both before the district court and on appeal. In essence, they argue that since "the delay of the trial court in ruling on the petitioners' motions to mitigate was due solely to unavoidable circumstances over which the petitioners had no control,"[3] the United States

---

**3.** Given our holding today, we accept for the sake of argument petitioners' contention that they in no way caused the delay in the trial court's ruling. However, we note that despite well-established Florida precedent under which the trial court would lose its jurisdiction to rule when the sixty-day period expired, petitioners waited fifty-five days to file their motions and

then apparently did not protest the assignment of a new judge to the matter, even though this plainly would require significant delay so that he could become familiar with the case. Also, it is not apparent from the record whether petitioners were in any way responsible for the delay in supplying the trial transcript.

Constitution compelled the Florida state courts to forgo in this case a strict construction of Rule 3.800(b)'s jurisdictional time limit. They contend that the rule must be read to allow a trial court to decide within "a reasonable time" whether to grant a timely filed motion to mitigate and assert that the Florida state court's literal interpretation of the rule "worked a fundamental unfairness upon the petitioners in this case," thereby denying them substantive due process. Petitioners rest this argument almost exclusively upon our decision in *United States v. Mendoza, supra,* interpreting Fed.R.Crim.P. 35, the federal counterpart to Florida's Rule 3.800(b).

The United States magistrate recognized the central importance of petitioners' substantive due process claim, as he discussed notions of fairness and justice and grounded his recommendations to the district court in the concept of "fundamental due process." Like petitioners, the magistrate depended almost entirely upon our *Mendoza* decision to conclude that the strict application of Rule 3.800(b) in this case violated the Constitution. He stated that *Mendoza* had "considered the principles of due process involved in this case" and, though conceding that "the Fifth Circuit was, of course, interpreting a federal rule," declared that "the rationale underlying the *Mendoza* decision is clearly one of fundamental due process."

In our view, this reliance upon *Mendoza* is misplaced, for contrary to the assertions of the magistrate, due process was not the underlying rationale for that decision. Nor did we discuss any constitutional principles in *Mendoza.* Rather, our decision turned upon general precepts of statutory construction and a specific provision of the Federal Rules of Criminal Procedure that sets forth the intended "purpose and construction" of the Rules.

Fed.R.Crim.P. 35 provides in pertinent part that "[t]he court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal." Defendant Mendoza filed his motion to reduce sentence fifty days after we had issued the mandate affirming his conviction. However, "[d]ue to a combination of factors beyond the defendant's control, . . . the trial court failed to act on the motion within the 120 day period" and the district court then held "that because the 120 day period had expired, it lacked jurisdiction to pass on the defendant's motion." 565 F.2d at 1287.

We began our analysis in *Mendoza* with emphasis upon a well-established principle of statutory interpretation: If strict construction of a statute's language would produce "an absurd, unjust, or unintended result," or " 'merely an unreasonable one' " at odds with the statute's purpose, the provision "must be construed so as to avoid that result." *Id.* at 1288, 1289.[4] We then observed that this rule of construction was "particularly appropriate in interpreting the Federal Rules of Criminal Procedure," since they "were not intended to be . . . a rigid code with an inflexible meaning," and called particular attention to Rule 2, which identifies the desired purpose and construction of the rules. *Id.* at 1289. Rule 2 states that "[t]hese rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." In light of that principle of statutory interpretation and the statement of purpose contained in Rule 2, we declined "slavishly [to] follow the literal language of [Rule 35] when that language leads . . . to an unjust and unreasonable result." *Id.* at 1289–1290. Instead, we held that a district court retains jurisdiction over timely filed Rule 35 motions to reduce sentence "for a

4. In light of the Florida state courts' interpretation of Rule 3.800(b), we are foreclosed from construing the provision in the same manner that we interpreted Fed.R.Crim.P. 35.

reasonable time after the expiration [of] 120 days in those rare circumstances in which it is unable to decide the motion within the 120 day period." *Id.* at 1293.[5]

Thus, we did not base our *Mendoza* decision upon any constitutional principles; not once did we mention the Constitution. Several other circuits have adopted the same construction of Rule 35, *see United States v. Stollings*, 4 Cir., 1975, 516 F.2d 1287; *United States v. United States District Court*, 9 Cir., 1975, 509 F.2d 1352, *cert. denied*, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975); *United States v. Janice*, 3 Cir., 1974, 505 F.2d 983, *cert. denied*, 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975); *United States v. Polizzi*, 9 Cir., 1974, 500 F.2d 856, *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *Leyvas v. United States*, 9 Cir., 1967, 371 F.2d 714; *Dodge v. Bennett*, 1 Cir., 1964, 335 F.2d 657, but these decisions also made no reference to matters of constitutional law.

Accordingly, notwithstanding petitioners' assertions and the magistrate's report adopted by the district court, *Mendoza* and the other cases interpreting Rule 35 do not help determine the constitutionality of Rule 3.800(b). "Over federal proceedings we may exert a supervisory power with greater freedom to reflect our notions of good policy than we may constitutionally exert over proceedings in state court . . . . [T]hese expressions of policy are not necessarily embodied in the concept of due process." *Fay v. New York*, 332 U.S. 261, 287, 67 S.Ct. 1613, 1627, 91 L.Ed. 2043 (1947) (Jackson, J.).

### B. The Substantive Content of the Due Process Clause

"It is established beyond question that . . . substantive due process rights are not limited to those liberties specifically enumerated in the Bill of Rights." *St. Ann v. Palisi*, 5 Cir., 1974, 495 F.2d 423, 425. Yet substantive due process has nonetheless "at times been a treacherous field" for the federal courts. *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (Powell, J., plurality opinion). It raises a danger that our decisions will "be based upon the idiosyncracies of a merely personal judgment," *Malinski v. New York*, 324 U.S. 401, 417, 65 S.Ct. 781, 789, 89 L.Ed. 1029 (1945) (Frankfurter, J., concurring), a risk that judges will "determine what is or is not constitutional on the basis of their own appraisal of what laws are unwise or unnecessary." *Griswold v. Connecticut*, 381 U.S. 479, 512, 85 S.Ct. 1678, 1697, 14 L.Ed.2d 510 (1965) (Black, J., dissenting). When, as here, we consider a claim that a given state law works a denial of substantive due process, we must skirt that danger and remember that a state's "procedure does not run [a]foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar." *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (Cardozo, J.).

The substantive content of the due process clause which goes beyond the specific provisions of the Bill of Rights embodies "a conception of fundamental justice." *Shields v. Beto*, 5 Cir., 1967, 370 F.2d 1003, 1004. *E.g., Hebert v. Louisiana*, 272 U.S.

---

5. The *Mendoza* panel opinion attempted to "fine tune" Rule 35 by identifying what constituted a "reasonable time" for filing. The panel held that "when a sentence reduction motion is filed on or before the *60th day* after sentencing or affirmance of the conviction on appeal, a district court which fails to rule on the motion within the 120 day period specified in the rule retains jurisdiction to decide the motion for a reasonable time beyond that period." However, the panel also noted that "we do not intend to draw a hard and fast rule and do not foreclose the possibility that in some cases special circumstances might exist which would

allow the district court to retain jurisdiction after 120 days to rule on a motion filed after 60 days." 565 F.2d at 1292.

Upon rehearing en banc, we "unanimously agree[d] with the decision that the district court should have retained jurisdiction to pass on the motion for a reasonable time after the 120 day period," but concluded that we should not use our supervisory power to "establish the 60 day rule articulated in the panel opinion" and therefore disavowed that portion of the decision. The en banc court adopted the remainder of the panel opinion. 581 F.2d at 90.

312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926); *Bute v. Illinois*, 333 U.S. 640, 648, 68 S.Ct. 763, 768, 92 L.Ed. 986 (1948); *Leland v. State of Oregon*, 343 U.S. 790, 799, 73 S.Ct. 1002, 1008, 96 L.Ed. 1302 (1952); *St. Ann v. Palisi, supra*, 495 F.2d at 425. It protects against state transgression only those personal immunities that are "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) (Cardozo, J.); *Roe v. Wade*, 410 U.S. 113, 151, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973), leaving a state "free to regulate the procedure of its courts in accordance with its own conception of policy and fairness, unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts, supra*, 291 U.S. at 105, 54 S.Ct. at 332.

"Fundamental rights," implicit in the concept of ordered liberty, include the right to vote, *e.g., Harper v. Virginia State Board*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); the right of association, *e.g., NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); the right of access to the courts, *e.g., NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), and assorted freedoms against state intrusion into family life and intimate personal decisions, *e.g., Moore v. City of East Cleveland, supra* (right of extended family to share household); *Roe v. Wade, supra* (woman's right to decide whether to have abortion); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (freedom to marry person of another race); *Griswold v. Connecticut, supra* (right to use contraceptives); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (parents' right to send children to private schools); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (parents' right to have children instructed in foreign language).

A state must advance a compelling justification to preserve a law or regulation that breaches any fundamental right. But "[t]he state must prove a compelling reason for a law *only* if it restricts a fundamental right; so long as such a right is not affected a law need only rationally relate to a legitimate government end." *Woods v. Holy Cross Hospital*, 5 Cir., 1979, 591 F.2d 1164, 1176 (emphasis added).

*C. Applying the Constitutional Principles*

Petitioners Sotto and Amor assert, in summary fashion, that the strict application of Rule 3.800(b) in this case violated their fundamental right of access to the courts. They contend that "[w]here, as here, one petitioner gains access to the courts, and another does not, solely by virtue of circumstances over which he has no control, then the Federal Constitution is seriously offended."

We disagree that Florida has abridged petitioners' right of access. At the outset, we note that the Constitution does not require Florida to afford convicted felons an opportunity to have their sentences mitigated. Further, once the state has chosen to establish a mitigation procedure, it is not constitutionally obligated to extend indefinitely the opportunity to seek mitigation. Florida determined instead to provide convicted persons who desire sentence reduction access to its courts for a limited time, by terminating the jurisdiction of its courts to hear and decide motions to mitigate when a statutorily fixed period expires. Sotto and Amor thus enjoyed the same access to Florida's courts as all other persons seeking reduced sentences—a sixty-day period during which the trial court had jurisdiction to rule upon their motions to mitigate.[6]

---

**6.** Viewed another way, petitioners' claim may be that once having properly filed their motion to mitigate, they had a fundamental right to have it ruled upon, even though the court lacked jurisdiction to do so. We find it difficult to conceive of such a right to a ruling or judgment from a court that, by statute and under well-established precedent, lacked jurisdiction to act.

█ However, as this case illustrates, Florida's mitigation scheme will in another way sometimes treat similarly situated persons differently. A trial court may decide one person's motion, but lose jurisdiction to rule upon that of another, even though both filed within the sixty-day period and the second is in no way responsible for any delay. If Florida's choice of its sentence mitigation system was simply arbitrary and bore no rational relationship to a valid objective of government, we would readily term the procedure "fundamentally unfair" and hold it unconstitutional. But Rule 3.800(b) is a rational means by which Florida can achieve at least three wholly legitimate governmental ends. First, finality of result is in itself a justifiable goal of a criminal justice system and Rule 3.800(b) ensures that upon the expiration of a fixed time period a conviction and sentence will stand as final. Second, because convicted persons cannot prolong this process by repeatedly filing new motions, the rule guards Florida's trial courts against a burdensome increase in their workload. Finally, and most important, the rule guarantees that trial courts will not inadvertently usurp the power of the parole board by making delayed rulings on motions to mitigate based upon prison conduct. The Florida Supreme Court[7] obviously did not want to "permit indefinite supervision by a trial court over all legal sentences it imposes," for as a Florida appeals court observed, "[s]uch supervision does not accord with reason or public policy. Under our tripartite system of government there must come a time when the judiciary's power to reduce a lawful sentence ends and vests in the executive department." *State v. Evans*, 225 So.2d 548, 550 (Fla.App., 1969).[8]

█ Another sentence mitigation rule, written or interpreted in a different way, might well serve these same ends without producing results like those of which Sotto and Amor complain.[9] However, the test of constitutionality is not whether there exists, in our view, a more rational or otherwise preferable alternative law. Nor does it matter under the Constitution that if we were Florida judges, we might have promulgated another rule or interpreted this one differently. Because we cannot say that Rule 3.800(b) as applied denied petitioners any fundamental rights and because we think the rule is rationally related to several valid objectives of government, we conclude that it does not violate the due process clause. Accordingly, we hold that the district court erred in granting Sotto and Amor's habeas corpus petition and therefore reverse.

REVERSED AND REMANDED.

---

7. The Florida Supreme Court promulgates the state's rules of criminal procedure.

8. Sotto and Amor also contend that the application of Rule 3.800(b) in this case denied them equal protection under the Constitution. Our discussion of petitioners' substantive due process claim disposes of this argument as well. No fundamental right has been abridged, petitioners do not belong to any suspect class and the Rule is a rational means by which to obtain several legitimate governmental ends.

9. Petitioners suggest Fed.R.Crim.P. 35, as interpreted in *Mendoza* and elsewhere, as such an alternative. We note, though, the possibility that the Florida Supreme Court did not want the state's courts forced to determine on a case-by-case basis what constitutes a "reasonable time" for filing, a process which would

undermine the precision and certainty afforded by the current rule.