## POWELL v. MUNROE REGIONAL MEDICAL CENTER, et al. and

## WHITE, et ux. v. GAUGER, et al. (Consolidated)

Case Nos. 84-2025 B and 83-2790 B

Fifth Judicial Circuit, Marion County

August 22, 1985

### APPEARANCES OF COUNSEL

**Jim Smith,** Attorney General, and **Miguel A. Olivella, Jr.,** Assistant Attorney General, for defendant, State of Florida.

**Janet W. Adams, Adams, Hill & Fulford,** for defendant, Munroe Regional Medical Center.

**Robert A. Ginsburg,** Dade County Attorney, and **Robert L. Blake,** Assistant County Attorney, for intervenors, Florida Eye Banks.

**Jerome Bornstein** and **Mark P. Lang,** Staff Counsel, American Civil Liberties Union, for plaintiffs.

**Richard B. Collins** and **Craig A. Dennis, Perkins & Collins,** for intervenor, Florida Society of Ophthalmology, Inc.

**Alan C. Sunberg** and **George N. Meros, Jr., Carlton, Fields, Ward, Emmanuel Smith & Cutler, P.A.,** for intervenors, Florida Eye Banks.

**Andrew G. Pattillo, Jr.,** and **Russell W. LaPeer** for defendants, William H. Shutze, Thomas M. Techman, and Keith Gauger.

**S. Ray Gill,** State Attorney, Fifth Judicial Circuit of Florida, for defendant, State of Florida.

**Jack Sinbgush, P.A.,** for plaintiffs.

**James T. Reich** for plaintiffs.

## OPINION OF THE COURT

WILLIAM T. SWIGERT, Circuit Judge.

This cause came on to be heard pursuant to the following motions in Case No. 83-2790-B:

1. Plaintiffs' ERWIN WHITE and SUSAN WHITE Motion for Partial Summary Judgment on the facial Constitutionality of Section 732.9185, Florida Statutes.

2. Defendants' SHUTZE, TECHMAN and GAUGER motions for Summary Judgment on all counts and issues raised in the pleadings as follows:

a. Facial constitutionality of Section 406.11, Florida Statutes, hereinafter referred to as the "Medical Examiner's Act."

b. Facial constitutionality of Section 732.9185, hereinafter referred to as the "Cornea Removal Statute."

c. Constitutionality of Section 406.11, Florida Statutes, as applied in this case.

d. Constitutionality of Section 732.9185, Florida Statutes, as applied in this case.

e. Liability of Defendants for damages as alleged in Count I of the Second Amended Complaint.

3. Intervenors' Motion for Summary Judgment on the facial constitutionality of Section 732.9185.

This cause came on to be heard pursuant to the following motions in Case No. 84-2025-B:

1. Plaintiffs WADE POWELL and FREDA POWELL'S Motion for Summary Judgment and the Defendants and Intervenor's Motion for Summary Judgment as to the constitutionality of Florida Statutes 732.9185.

And after considering the respective motions, the Memoranda of

Law submitted by the parties and intervenors, the affidavits and depositions on file and after hearing arguments of counsel and being otherwise duly advised in the premises, upon consideration thereof the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On June 15, 1983, James E. White, age 15, drowned while swimming in the Rainbow River at the Dunnellon City Beach in Marion County, Florida.

2. Plaintiffs Erwin and Susan White are the surviving parents and next of kin of James E. White.

3. The body of James E. White was taken to Munroe Regional Medical Center in Ocala, Florida, where Defendant, Keith Gauger, an investigator for the Medical Examiner's Office for the Fifth Medical Examiner's District of the State of Florida, had a conversation with Erwin White prior to the body of James E. White being transferred to Leesburg, Lake County, Florida.

4. During that conversation, Erwin White inquired of Defendant Gauger whether or not there was any indication of any foul play or any struggle and, according to Erwin White, was told by Defendant Gauger that there was no such indication and that the death ". . . according to the police report and the rescue squad report was just a simple accidental drowning. . . ." (Deposition of Erwin White, page 18, line 9, et seq.) After learning this, Erwin White advised Defendant Gauger that he did not want an autopsy performed on the body. Notwithstanding this objection to an autopsy, Defendant Gauger advised Erwin White that an autopsy was required under state law. (Erwin White deposition page 17, line 7, et. seq. and page 21, lines 1-22.) Defendant Gauger testified at his deposition that his recollection of this conversation was different from that of Erwin White.

5. That Assistant State Attorney James W. Phillips, sometime between April and October, 1983, made a request that autopsies be performed on all drowning victims in Marion County, Florida, and testified that his authority for this request was Section 925.09, Florida Statutes.

6. That Assistant State Attorney Phillips had no knowledge of the facts and circumstances surrounding the death of James E. White prior to the autopsy being performed on his body.

7. Notwithstanding the objection of Erwin White to an autopsy being performed on the body of James E. White, a full autopsy was performed by Defendant Techman.

**91**

8. That Defendant Techman did not know the corneas had been removed from the body of James E. White until it had been delivered to him in Leesburg, Florida, and the corneas were removed prior to the body being transported to Leesburg.

9. On July 11, 1983, at approximately 2:00 a.m., Anthony Wayne Powell, a 20 year old single male, and the son of Plaintiffs, Wade and Freda Powell, was severely injured as a passenger in a motor vehicle collision. He was admitted to Defendant, Munroe Regional Medical Center, at approximately 4:49 a.m. and pronounced dead at that time.

10. Plaintiff, Wade Powell, after being notified of his son's accident, identified the body of Anthony W. Powell at the hospital at approximately 5:15 a.m. on July 11, 1983, and thereafter he and his wife, Freda Powell, went into an adjacent waiting room where they remained until 7:30 a.m.

11. At approximately 6:30 a.m., the corneas of Anthony Wayne Powell were removed by a technician under the direction of Defendant District Medical Examiner, William H. Shutze, at Defendant, Munroe Regional Medical Center, while the Plaintiff parents, Wade and Freda Powell, waited in an adjacent waiting room.

12. No one asked the Plaintiff parents, Wade and Freda Powell, whether they had any objection to the removal of their son's corneas, or whether they consented to same.

13. Had they been asked, the Plaintiff parents, Wade and Freda Powell, would have objected to and would not have consented to removal of their son's cornea.

14. At approximately 7:30 a.m., Plaintiffs, Wade and Freda Powell, left the hospital, unaware their son's cornea had been removed.

15. That it is the policy of the Office of the Medical Examiner not to solicit objections to corneal removal or to advise next of kin of the intent to remove corneas.

16. That no one associated with the Office of the Medical Examiner knew of a patient in need of a cornea except that the Intervenor eye banks had disseminated information that there is always a need for corneas for transplant.

17. That one of the corneas removed from the body of James E. White was not used for transplantation but for some other purpose and the other was transported to the State of New York and transplanted into a patient in that state.

92

## COMMENTS AND CONCLUSIONS OF LAW

The following comments are strictly those of the Court gleaned from researching the relevant law as to this case and its historical bases.

Since the beginning of time man has regarded the control, possession and custody of the body and remains of a deceased family member as a basic and cherished right. There are deep religious, moral and philosophical beliefs and convictions upon which this view is predicated. Although the Court is mindful of these views, these cases must be decided on legal grounds which in many respects parallel those views.

The Cornea Removal Statute has as its purpose the commendable and laudable objective of providing high quality cornea tissue to those in need of same. It helps supply and restore sight to the very young, the sick, accidental and diseased victims, and the very old. The gift of sight is one of the most precious of life.

The efforts of the Legislature, civic organizations, such as the Lions Club, and other groups and efforts to assist in these purposes of providing sight for the sightless should be encouraged and supported. This Court supports those efforts.

However, notwithstanding public good which may result from the Cornea Removal Statute and the other statutes providing for the transfer of human organs, they are only valid if they meet constitutional requirements. If the taking of the cornea is by way of the gift or a gift after death with the *consent* of the next of kin, it is certainly constitutionally permissible. When the taking is *without* the requirements of *inter vivos* consent or *post mortem* consent of the next of kin, it is constitutionally invalid for the reasons set forth below (emphasis supplied).

It is the lack of consent, either while living or after death, the consent of the next of kin (or at least the requirement of reasonable notice to the next of kin to obtain same) that makes the Cornea Removal Statute unconstitutional.

The statute requires no notice to the next of kin whatsoever.

The Court finds in light of the facts of this case and the relevant law:

1. That Section 406.11, Florida Statutes—"The Medical Examiner's Act", is constitutional on its face and was constitutionally applied in these cases.

2. That Florida Statutes 732.9185—"Cornea Removal Law", is facially unconstitutional for the following reasons:

   a. Plaintiffs have a right to receive, possess and dispose of the

**93**

body of their sons in the same condition as his death left it, except for the

b. This right is an intimately personal and fundamental one implicit in the concept of ordered liberty and may not be transgressed or interfered with by State action without a compelling state interest.

c. This right has been characterized by the courts of the State of Florida as a property right enjoyed by the next of kin. *Dunahoo v. Bess,* 200 So. 541 (Fla. 1941); *Kirksey v. Jernigan,* 45 So.2d 188 (Fla. 1950). The deaths of James E. White on June 15, 1983, and of Anthony W. Powell on July 11, 1983, fell squarely within conditions contained in the statute, under which autopsies are authorized.

d. Section 732.9185 deprives Plaintiffs of this right without affording them procedural or substantive due process of law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Constitution of the State of Florida because it allows an alteration of and removal of a part from the body of their son without notice or an opportunity to be heard and creates and places Plaintiffs in an invidious classification. This classification is a statutory scheme which causes the next of kin of persons who die under circumstances which cause the decedent to come under the jurisdiction of the Medical Examiner and which subject the remains to an autopsy to suffer the consequences of having a part of those remains removed without notice and without their consent and therefore deprive them of their right to receive, possess and dispose of those remains in the same condition as death left them, while the next of kin of persons who die under circumstances which do not cause the decedent to come under the jurisdiction of the Medical Examiner and which do not subject those remains to an autopsy do not suffer the consequences of having a part of those remains removed without notice and without their consent and they are not deprived of their right to receive, possess and dispose of those remains in the same condition as death left them.

e. This invidious classification and the resultant action also deprive Plaintiffs of their right to equal protection of the law guaranteed them by the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Constitution of the State of Florida.

f. Removal of the corneas from the remains of their son and without notice to them and without their consent and against their

wishes and desires is an unconstitutional invasion of Plaintiffs' rights of privacy under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 23 of the Constitution of the State of Florida. The right of Plaintiffs to receive, possess and dispose of the remains of their son in the same condition as death left them is an intimate personal right which is fundamental and implicit in the concept of ordered liberty. *Moore v. City of Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed 2d 531 (1977); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed 2d 147 (1973); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed 2d 1010 (1967); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed 2d 510 (1965); *Sotto v. Wainwright*, 601 F.2d 184 (5th Cir. 1979).

g. Removal of corneas from decedents under the jurisdiction of the medical examiner for transplantation into other persons constitutes a taking of private property by state action for a non-public purpose in violation of Article X, Section 6(a) of the Constitution of the State of Florida.

h. The statute grants to the medical examiner arbitrary authority to dispose of cornea by unauthorized removal, in direct contravention to the wishes of the surviving next of kin Plaintiffs and in violation of procedural due process protections and requirements of Article I, Section 9, of the Florida Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

3. There is no compelling state interest in the removal of cornea from deceased persons, without consent from the next of kin, which outweighs the rights of the surviving next of kin to possession and disposition of the deceased's body in the same condition as when death occurred.

Accordingly, it is ORDERED AND ADJUDGED as follows:

1. That the Motion for Summary Judgment of the Defendants and Intervenors on the facial constitutionality of Florida Statutes 406.11 is hereby granted and said statute is held to be constitutional on its face.

2. That the Motions for Summary Judgment of the Plaintiffs that Section 732.9185, Florida Statutes, is unconstitutional on its face is granted and said statute is held to be unconstitutional on its face.

3. That the Motions for Summary Judgment of the Defendants and Intervenors on all other issues are denied.